# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Jonathan Aten,

                              Plaintiff,

                                        Civ. No. 06-2931 (RHK/AJB)
                                        **MEMORANDUM OPINION AND
                                        ORDER**

v.

Scottsdale Insurance Company,

                              Defendant.

---

Jaren L. Johnson, Renee I. Fossen, BenePartum Law Group, P.A., Eagan, Minnesota, for
Plaintiff.

Stacy A. Broman, Steven C. Wang, Bradley M. Jones, Meagher & Geer, PLLP,
Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

The plaintiff in this insurance coverage dispute, Jonathan Aten, has sued defendant

Scottsdale Insurance Company ("Scottsdale"), seeking to recover a $101,035.62 judgment

he obtained against Scottsdale's insured.  Scottsdale now moves to dismiss Aten's

Complaint.  For the reasons set forth below, the Court will grant Scottsdale's Motion.

## BACKGROUND

On March 16, 2004, Aten entered into a contract with Leslie Joe Hanke and

Castlerock Construction LLC ("Castlerock") to construct a house in St. Paul, Minnesota.

(Compl. ¶ 5.)  Work commenced in April 2004 and was completed before the November 1,

2004, closing of the mortgage on the property.  (Id. ¶ 7.)  Upon taking possession of the

house, Aten discovered a number of defects with Castlerock's work.  (Id. ¶ 8; Wang Aff. Ex.

A.)[1]  Those defects included "trim missing, exposed sheetrock screws, damaged pieces of

sheetrock installed, interior walls that were not plumb, floors that were uneven, gaps

between the flooring and wall/trim, doors off center, door jams improperly installed,

uneven and cracked floors in the garage and basement, with the basement floor not graded

properly towards the drain causing water damage."  (Wang Aff. Ex. A at 2-3.)  In addition,

Castlerock did not pay for certain supplies used during the construction, requiring Aten to

satisfy an $11,035.62 materialman's lien on the house.  (Id.)

　　　In December 2005, Aten commenced an action against Hanke and Castlerock in

Ramsey County District Court, seeking to recover damages for the defective construction

and for the lien Aten had been required to satisfy.  (Compl. ¶ 9.)   Neither defendant

appeared in that action, and a $101,035.62 default judgment was entered against the

defendants and in favor of Aten.  (Id. ¶¶ 10, 13.)  That judgment consists of the $11,035.62

Aten paid to satisfy the materialman's lien and an additional $90,000 "to remedy and

---

[1] In ruling on a motion to dismiss, the Court may consider documents incorporated by reference in the Complaint.  See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).  Aten has referenced a state-court default judgment rendered against Hanke and Castlerock in several places in his Complaint.  (See Compl. ¶¶ 10, 13-14.)  Accordingly, the Court may consider the default judgment – which Scottsdale has attached as Exhibit A to the Affidavit of Steven C. Wang, Esq. – when ruling on Scottsdale's Motion.  The same is true of the insurance policy at issue, which is attached as Exhibit B to Wang's Affidavit.

correct the defects and deficiencies in the construction of the home." (Wang Aff. Ex. A at 5.)

On June 6, 2006, Aten commenced the instant action against Scottsdale. Scottsdale had issued a commercial general liability insurance policy (the "Policy") to Castlerock that was effective during the construction period. (Compl. ¶ 12.) Aten alleges that Scottsdale is obligated by the Policy to satisfy the default judgment he obtained against Castlerock in the state-court action. Aten asserts three claims in his Complaint: breach of the implied covenant of good faith and fair dealing (Count I); breach of contract (Count II); and unjust enrichment (Count III). Scottsdale now moves to dismiss each of these three claims.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court looks to the factual allegations in the Complaint. Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). All factual allegations must be accepted as true and every reasonable inference must be made in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); Midwestern Mach., Inc. v. Nw. Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999). However, the Court need not consider conclusory allegations or blindly accept the legal conclusions drawn by the plaintiff. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981). A complaint should be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In addition, the interpretation of an insurance policy is a question of law for the

Court.  Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997).[2]  When

the language of an insurance policy is unambiguous, the language is interpreted "in

accordance with its plain and ordinary meaning."  Ill. Farmers Ins. Co. v. Glass Serv. Co.,

683 N.W.2d 792, 799 (Minn. 2004).

## ANALYSIS

### I.    Breach of contract[3]

Scottsdale attacks Aten's breach-of-contract claim on two fronts.  First, it argues

that a third party to an insurance policy cannot bring a direct action against the insurer under

Minnesota law.  (Def. Mem. at 9.)  Second, Scottsdale argues that even if the Court

concludes that Aten may sue Scottsdale under the Policy, he still cannot recover because

Scottsdale has not breached the Policy.  (Id. at 9-13.)  The first argument fails; the second

does not.

Scottsdale initially argues that "Minnesota follows the general rule that a plaintiff

cannot maintain a direct action against another party's insurer."  (Id. at 9 (citing Anderson v.

St. Paul Fire & Marine Ins. Co., 414 N.W.2d 575, 577 (Minn. Ct. App. 1987)).)  As Aten

correctly notes, however, an exception to this general rule applies when a third party to the

insurance contract has obtained a judgment against the insured.  See Morris v. Am. Family

---

[2] State law governs the interpretation of insurance policies.  Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003).

[3] Although it is pleaded second in the Complaint, the Court begins its analysis with the breach-of-contract claim because Aten's other two claims are tied to it.

Mut. Ins. Co., 386 N.W.2d 233, 237 (Minn. 1986) ("an injured third[-]party claimant is not

privy to the insurance contract and cannot sue an insurer directly for failure to pay a claim

*but must first obtain a judgment against the insured*") (emphasis added); Rinn v. Transit

Cas. Co., 322 N.W.2d 357, 358 (Minn. 1982) (same).

In an attempt to sidestep these holdings, Scottsdale points out that Aten's judgment

in the state-court action resulted from Castlerock's *default*.  (Def. Mem. at 9; Reply Mem.

at 3.)  However, this is a distinction without a difference.  Nothing in Morris or Rinn

suggests that a default judgment against the insured should be treated differently than a

judgment obtained after active litigation.  In fact, the court in Britamco Underwriters, Inc. v.

A & A Liquors of St. Cloud, 649 N.W.2d 867, 870 (Minn. Ct. App. 2002), recognized that a

default judgment was a sufficient basis on which a third party could bring a direct action

against an insurer for the liability of the insured.  Accordingly, the Court rejects

Scottsdale's argument.

Scottsdale next argues that the damages Aten seeks are not covered under the Policy

– Scottsdale is correct.  The Policy provides coverage for "property damage" that is caused

by an "occurrence."  (Wang Aff. Ex. B, Section I ¶ 1(b)(1).)  Scottsdale argues that the

damages Aten seeks did not result from an "occurrence," as that term is defined in the

Policy.  An "occurrence" is "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  (Wang Aff. Ex. B, Section V ¶ 13.)

Scottsdale contends that Castlerock's faulty construction cannot be considered an "occurrence" as a matter of law.  (Def. Mem. at 10-11.)[4]

The court in Ploetz v. Beaver Builders Supply, No. C8-98-945, 1998 WL 865670 (Minn. Ct. App. Dec. 15, 1998), considered this question on nearly analogous facts to this case.  There, the plaintiffs had contracted with one of the defendants to build the plaintiffs' log home.  After the work was completed, the plaintiffs noticed sagging floors and other problems that threatened to collapse the home.  The plaintiffs sued the builder and the parties settled their dispute.  The plaintiffs then sought payment of the settlement amount from the builder's comprehensive general liability insurer, but the insurer disclaimed coverage.[5]  The plaintiffs then sued the insurer.  In affirming the trial court's order concluding that the insurer was not obligated to pay, the court stated that the builder's "conduct in the construction of [the plaintiffs'] home cannot be viewed as an occurrence within the meaning of [the] CGL policy."  Id. at *2.  Other Minnesota courts have similarly concluded that faulty construction does not amount to an "occurrence" under a comprehensive general liability insurance policy.  See, e.g., W. Nat'l Mut. Ins. Co. v. Frost Paint & Oil Corp., No. C3-97-1118, 1998 WL 27247, at *2 (Minn. Ct. App. Jan. 27, 1998)

---

[4] Scottsdale also argues that satisfaction of the materialman's lien is not "property damage" resulting from an "occurrence."  (Def. Mem. at 8.)  Aten has not responded to this argument.  The Court agrees with Scottsdale that satisfaction of the lien falls outside the Policy's definition of "property damage."  Accordingly, Aten cannot recover from Scottsdale that portion of the state-court judgment attributable to the materialman's lien.

[5] A "commercial general liability" insurance policy (like the Policy here) is the same as a "comprehensive general liability" insurance policy, which is the name such insurance was previously called.  See, e.g., Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880 n.1 (Minn. 2002).

("faulty workmanship alone does not constitute an occurrence"); Ebenezer Soc'y v. Dryvit Sys., Inc., 453 N.W.2d 545, 548 (Minn. Ct. App. 1990) ("To the extent Ebenezer seeks damages for building and structural damage, there is clearly no coverage under the comprehensive general liability policies.  A comprehensive general liability policy is intended to protect third parties who suffer damage to person or property.  It is not intended to guarantee the insured's workmanship.") (citations omitted).

These decisions, and others reaching the same result, are predicated on the "business risk" doctrine, which recognizes that the "risks associated with the normal, foreseeable, and expected incidents of doing business are generally not insurable."  Wellington III Assocs. v. Providence Builders Corp., No. CX-94-758, 1994 WL 523851, at *2 (Minn. Ct. App. Sept. 27, 1994).  In the construction context, the business risk doctrine means that "a general contractor may not pass on to its insurer the risk that the contractor may have to repair or replace defective work or materials where the general contractor undertook to furnish all materials and labor and had responsibility for construction."  Id.; accord Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 881 (Minn. 2002) (business risk doctrine applies to risk that the insured "may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity"). The rationale underlying the business risk doctrine is a sound one; in its absence, "a contractor could perform unsatisfactory work, receive compensation for the work, and then be paid a second time by the insurance provider in order to fix the unsatisfactory work."  W. Nat'l Mut. Ins. Co. v. Barbes, No. A05-2011, 2006 WL 1704201, at *4 (Minn. Ct. App.

June 20, 2006).  The business risk doctrine, therefore, prevents the contractor from being

"less than optimally diligent in . . . the performance of his contractual obligations to

complete a project in a good workmanlike manner."  Id.

The business risk doctrine is applicable here.  Aten seeks to impose liability on

Castlerock's insurer solely because of Castlerock's defective construction.  This is

precisely the type of normal and foreseeable incident of doing business for which a

contractor cannot foist liability on its insurer, because this is not the type of injury for

which commercial general liability insurance was designed.  Bor-Son Bldg. Corp. v.

Employers Commercial Union Ins. Co., 323 N.W.2d 58, 63 (Minn. 1982).

The only argument that Aten can muster to avoid the application of the business risk

doctrine is that the water intrusion at the house was an "occurrence."  (Mem. in Opp'n at 4-

5.)  This argument is without merit, because the water intrusion necessarily flowed from

the faulty construction.  The Ebenezer court reached the same conclusion.  There, the

plaintiffs had sued a contractor who had improperly installed insulation at the plaintiffs'

apartment complex.  Water had leaked into the apartment complex as a result of the shoddy

installation.  The plaintiffs sued the contractor and, after obtaining a judgment, attempted to

collect from the contractor's comprehensive general liability insurer.  The Minnesota

Court of Appeals affirmed the trial court's conclusion that the insurance policy did not

provide coverage for the water intrusion damage (or any other damage) caused by the

contractor's work.  See also Bor-Son, 323 N.W.2d at 63 (water intrusion resulting from

faulty construction not covered under contractor's comprehensive general liability policy).
The same result should obtain here.

For these reasons, the Court will dismiss Aten's breach of contract claim.[6]

## II.    Breach of the implied covenant of good faith and fair dealing

Aten alleges that Scottsdale has "intentionally and/or negligently failed to satisfy its obligation under the [Policy]" and that, as a result, it has breached the implied covenant of good faith and fair dealing.  (Compl. ¶¶ 19-21.)  Scottsdale argues that this claim must be dismissed because Minnesota "does not permit an independent claim for breach of the covenant of good faith and fair dealing when that claim arises out of the same conduct as a breach of contract claim."  (Def. Mem. at 13.)  Aten has failed to respond to this argument.[7]

Scottsdale is correct.  "Minnesota law does not recognize a separate cause of action for breach of the implied covenant of good faith when it arises from the same conduct as a breach-of-contract claim."  Seren Innovations, Inc. v. Transcontinental Ins. Co., No. A05-917, 2006 WL 1390262, at *8 (Minn. Ct. App. May 23, 2006) (citing Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975)).  Insofar as Aten predicates his breach-of-implied-covenant claim on the same conduct as his breach-of-contract claim – Scottsdale's failure to pay under the Policy – this claim must be dismissed.

---

[6] Scottsdale also argues that two exclusions in the Policy – the "completed work" exclusion and the "impaired property" exclusion – preclude coverage in this case.  (Def. Mem. at 4-8.)  Because the Court concludes that Castlerock's faulty construction is not an "occurrence" under the Policy, it is not necessary to reach these arguments.

[7] Aten has responded only to Scottsdale's argument that he does not have standing to assert an implied-covenant claim because he is not a party to the Policy.  (Mem. in Opp'n at 7.)

-9-

### III.      Unjust enrichment

Aten alleges that Scottsdale has been unjustly enriched because it has kept the premiums paid by Castlerock but has refused to make payment to Aten.  (Compl. ¶¶ 29-32.) Scottsdale is correct that this claim fails as a matter of law.  "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996) (citation omitted).  Nothing illegal or unlawful occurs when an insurance company accepts premiums from its insured and later denies liability to a third party because the insurance policy at issue does not cover the damages alleged.[8]

In addition, Aten concedes that an unjust-enrichment claim will not lie where there is a "valid contract completely governing the rights of the parties."  (Mem. in Opp'n at 7 (citing Stein v. O'Brien, 565 N.W.2d 472, 474 (Minn. Ct. App. 1997)).)  Here, such a contract exists:  the Policy.  Indeed, Aten has pleaded a breach-of-contract claim, indicating his awareness that a contract exists governing Scottsdale's rights and obligations vis-a-vis

---

[8] Aten argues that an unjust enrichment claim may stand if the benefitting party engages in conduct "similar in nature to fraud," even if the conduct is not illegal.  (Mem. in Opp'n at 7.)  Assuming *arguendo* that this is a correct statement of law, Aten's claim nevertheless fails because he has failed to allege any facts even remotely suggesting that Scottsdale's conduct was fraudulent, or "similar in nature to fraud."

Castlerock (and, by extension, Aten).  Aten's unjust-enrichment claim fails for this

additional, and independent, reason.[9]

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendant Scottsdale's Motion to Dismiss Plaintiff's Complaint (Doc.

No. 3) is **GRANTED** and Plaintiff Jonathan Aten's Complaint (attached to Doc. No. 1) is

**DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 19, 2006

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[9] The Court also notes that it is questionable whether Aten could, as a matter of law, maintain an unjust-enrichment claim against Scottsdale when it was Castlerock, not Aten, which made the premium payments that "unjustly enriched" Scottsdale.

-11-